Virgie Kitchen *v.* Union Township, Appellant.

171   145
179   325
171        145
32 SC ¹494

*Negligence—Townships—Roads—Guard rails.*

In an action to recover damages for personal injuries against a township, the case should be submitted to the jury, where the evidence for the plaintiff tends to show that at a point on a township road along which plaintiff was driving, her horse took fright at a derrick which was being operated in a quarry close to one side of the road, and dashed down a precipitous descent on the other side of the road, which at this point was not guarded by a suitable fence or guard rail: Burrell Township v. Uncapher, 117 Pa. 353, and Plymouth Twp. v. Graver, 125 Pa. 24, followed.

*Negligence—Townships—Evidence—Opinion of witness.*

In an action against a township to recover damages for injuries caused by an alleged defective road, a witness who has described the locality of the accident, and of the elements of danger in it to ordinary travel on the highway, may supplement his evidence by an opinion that it was a dangerous place.

In an action against a township to recover damages for injuries caused by a failure of the supervisors to erect a proper barrier at a dangerous place on a public road, it is not competent for the defendant to prove that barriers had been erected at such places as the supervisors deemed most dangerous along the road, nor to prove that the erection of barriers at the place where the accident occurred and at similar places on the same road would cost more than a reasonable or proper proportion of the township money, and more than the township could reasonably bear, in the absence of any evidence as to the expense of erecting a sufficient barrier at the point in question, or that any suitable sum of money had been spent by the township in erecting barriers at the other places referred to.

In an action by a married woman to recover damages for personal injuries, the fact that she was allowed to testify that her husband was out of work and had been so for a considerable time, is not ground for reversing a judgment in favor of the plaintiff, inasmuch as the evidence, even if irrelevant, is harmless.

Argued April 15, 1895. Appeal, No. 163, July T., 1894, by defendant, from judgment of C. P. Luzerne Co., June T., 1890, No. 13, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Trespass for personal injuries. Before WOODWARD, J.

At the trial the evidence showed that on January 16, 1890, William Kitchen and Virgie Sutliff, the plaintiff, who afterwards married Kitchen, were driving in a two wheeled cart from Nanticoke to Fairmount. At about eleven o'clock in the morning they came to a point in the road where a derrick was being worked in a quarry close to one side of the road. The horse became frightened, and Kitchen, leaving plaintiff in the cart, got out and attempted to lead the horse past the quarry. When opposite the derrick, the horse plunged to the left of the road, and down an unguarded embankment, landing with plaintiff, Kitchen and the cart upon a flat car of the Delaware, Lackawanna & Western Railroad. Plaintiff was thrown violently out of the cart and seriously injured.

Other facts appear by the opinion of the Supreme Court.

Dr. Bonham, a witness for plaintiff, was asked whether or not he considered that a dangerous place or otherwise.

Objected to because (1) the witness is not competent to give an opinion on the subject, under his testimony he not having seen the place within three years of the time the accident happened—either one side or the other; (2) under the circumstances of this case it is not a subject of expert testimony.

The Court: Plaintiff proposes to follow this testimony with other testimony showing that the condition of these premises was the same at the time of the accident that it was when the witness knew them three years before the accident.

Plaintiff's counsel: Yes, sir, both for three years before and right along since.

Objection overruled, evidence admitted, exception noted, bill sealed for defendant.

Q. Whether or not you consider that a dangerous place or otherwise?    A. I would consider it a dangerous place. [12]

Defendant proposed to show by the witness Harrison, that they had expended several thousand dollars there for the purpose of preparing this place for the shipment of stone—a legitimate business connected with their railroad.

Objected to as immaterial.

The Court: I can hardly see how it is pertinent to the issue.

Defendant's counsel: We propose to show by the witness that the company had expended several thousand dollars there in their work.

The Court: How does that affect this case?

Defendant's counsel: Only with reference to putting these barriers.

Objection sustained, exception noted, bill sealed for defendant. [13]

Defendant offered to show that a ten mill tax upon the assessed valuation of the township in the year 1890, and for many years previous thereto, would have produced, if all collected, $650. Without deducting exonerations and ordinary losses, that a ten mill tax only produced about $550. For those years that the miles of road in the township are between fifty and sixty, that there are at least eight to ten miles similarly situated with this road, that is on a side hill, in close proximity with declivities, there being many miles of road along the river and

along the various creeks, situated similarly to this.    That to place barriers to keep skittish horses from running off similar places to this would cost, several hundred dollars—probably one, two or three thousand dollars—which is more than a reasonable or proper appropriation, and more than the township could reasonably bear.    This to be taken in connection with the previous offer that they have been regularly levying a ten mill tax for general road purposes, a special tax of five to ten mills, and even higher, for road purposes, each year previous to 1890.

Objected to as immaterial and irrelevant.

The Court: In the absence of any evidence as to the expense of erecting a sufficient barrier at the point in question, or that any suitable sum of money has been spent by the township in erecting barriers at other places referred to, we don't think this offer is competent.    Objection sustained, exception noted, and bill sealed for defendant. [14]

Defendant renewed the last offer, with the addition that the moneys so raised had all been expended for road purposes, that in 1890, the time of this accident, the township was in debt $500, at least, and that the roads were in only fairly passable condition ; that to have expended the sum required to build barriers along all places similarly situated would incur the expense mentioned, and would be burdensome for the township to bear.

Objected to as immaterial and irrelevant.

The Court: It appears in this case already that this stone quarry has been worked some fifteen years at this point, that the road had never been fenced or any barrier built by the township.    We say now distinctly, that if the defendant can show that the township was too poor to put a barrier at this point, sufficient to make it safe, we will admit the testimony. But the offer to show that they could not fence all the dangerous places in the township, not coupled with any proof that they have fenced any, is not competent.

Objection sustained, exception noted, and bill sealed for defendant. [15]

In addition to what had been already offered, the defendant offered to show that at the points that were considered by the supervisors as being most dangerous along the road, barriers have been placed.

Objected to as immaterial and irrelevant.

Objection sustained, exception noted, and bill sealed for defendant. [16]

Plaintiff was asked this question : Q. You say your husband is doing nothing now ?   A. No, sir.   Q. How long is it since he ceased to work ?

Objected to (by defendant's counsel) as immaterial.

The Court: I think we will take it.   Bill sealed at defendant's request.

Question (repeated) : How long has your husband been doing nothing ?   A. Has not had steady work since the first of October.   He has worked three weeks since that time. [17]

The court charged in part as follows :

[Was the township negligent in failing to provide a fence or barrier at this point of the road leading from Hunlock Creek to Shickshinny ?   This is a question of fact to be decided by the jury under the evidence in the case.] [1]   It is the duty of township authorities to keep roads in good order and repair, so that they shall be reasonably and fairly safe for ordinary use by the people.   It is the duty of supervisors of townships to be active in the performance of their obligations to the public. They are to go over their respective districts, and ascertain the condition of the roads and bridges, and are not to wait for accidents to occur, but they are to prevent them if possible.   This duty of townships, of course, is not confined to that of providing a level or good roadway upon which vehicles can move, but it may include the obligation to maintain barriers, fences, or protective agencies at points along the roads where, from narrowness of the road itself or the existence of embankments or any other natural cause, there is a demand for more than ordinary provision for public safety.

At the point in question in the township of Union, the Delaware, Lackawanna & Western R. R. have a quarry which has been worked for some fifteen years by means of a derrick and a drum.   If by reason of the existence there of that quarry and this mechanism to work it, the road was rendered an unusually dangerous place likely to be the scene of disaster and accident, then it would be the duty of the supervisors having knowledge of this state of things to use reasonable care and diligence to prevent such accident.   Now, some question has

been made in the present case as to what was the primary cause of the accident. I do not think that question is of controlling importance in the present case, while in other cases which are reported in the books it has been much discussed and considered of the last importance. In the present case it is not clearly established by the evidence what caused the horse to be frightened. That he was frightened is clearly shown. Whether his fright came from a noise made by the drum or derrick is not clearly established. Because while it is alleged on the part of some of the witnesses that this was the case, it is denied by others who were there that the derrick was in operation or that the drum was being used at the time. Again, if the accident was caused from the noise from the drum or the derrick, there is no evidence that these appliances were being used in any unusual or extraordinary manner on this day. [As we have said, this quarry had been worked for fifteen years, and the machinery had been practially the same during all that time. The supervisors, therefore, had full notice and knowledge of these facts, and if the road was rendered unsafe or dangerous by reason of the existence of this machinery at this point, then their duty to protect the road would follow, provided this increased the risk beyond the ordinary danger.] [5] On this subject, in order that I may be within the line of the adjudicated cases, I call your attention for a moment to a decision by our Supreme Court which seems to me to be pertinent. Speaking of the facts, the Supreme Court say : " The defendant owed a duty to the plaintiff as one of the public, to keep a reasonably safe road at the place where this accident happened. If that was not done, the omission was an act of negligence on the part of the defendant, and if in consequence of that negligence an injury was sustained by the plaintiff, the defendant is responsible in damages to the plaintiff. It is no answer to say that some one else was also guilty of another act of negligence, in consequence of which the plaintiff's injury was suffered. If both the defendant and other parties were derelict, the plaintiff may proceed against either, though of course only one actual recovery of damages for the same injury could be permitted. Between the two alleged acts of negligence in the present case there is no relation of proximity or remoteness in the sense in which the law regards that subject, so as to post-

pone the liability of one because of the liability of another, or because of the intervention of an intermediate agency :" Burrell Township v. Uncapher et al., 117 Pa. 362.

If it were the duty of the township supervisors to make the road safe at this point, I am unable to see how that duty is affected in any way by the fact that the Delaware, Lackawanna & Western R. R. Co. had machinery there which would be interfered with.    The supervisors were bound to make the road safe, no matter what the result was to the convenience of this company and its operations at the quarry.

[Having made these general observations in regard to the character of negligence, its legal significance and the duty of township officers, we come to the next question in the case, which is also one of fact for you, namely : Did the negligence of this plaintiff concur in causing the accident and the injury complained of?] [7]    Because, as we have already stated to you, if her negligence concurred, assisted in producing it—if the accident was the result of the negligence both of the supervisors and of herself, then she cannot recover in this case. While the law requires that the roads of a township shall be kept in good order and repair, and made reasonably safe, it also requires that travelers upon township roads shall themselves use ordinary care and prudence to prevent accident.

This brings us to the question, Was the plaintiff's failure to get out of the cart when her companion did, negligence on her part, and did it concur in producing the accident?    Of course, it is clear if she had gotten out of the cart, she would not have been injured in the manner that she was.    [Was it her duty to get out?] [10]    In deciding that question, gentlemen, you are to look upon it as men of ordinary reason and common sense.    If you believe, under all the circumstances of the case, that this woman, riding with her affianced lover, afterwards her husband, should in the exercise of ordinary care and prudence have gotten out of the cart when he got out and took the horse by the head, then she would be negligent in not doing so ; but if, on the other hand, you believe that having confidence in her companion, she trusted to his prudence and ability to manage this horse and did what the average woman would have done under the same circumstances, then she would not be negligent.    It is for you as men of sense to say whether she was

negligent or not in this conduct. If she was negligent, it being clear that the accident would not have occurred if she had gotten out, then it would be concurring negligence, and there could be no recovery by her in this case.

Plaintiff's point was as follows :

1. If the jury believe that the road at the place of the accident was dangerous by reason of its proximity to the quarry and its machinery, the character of the opposite bank along the highway, and the railroad tracks, and that common prudence required extra precaution in the way of the erection of barriers or guard rails there along, to insure the safety of the traveling public, it was the duty of the defendant to have such guards or barriers, and if the accident to plaintiff was caused by such failure, without any contributory negligence on plaintiff's part, the plaintiff is entitled to recover. *Answer :* That point we have substantially affirmed already in our general charge and we now affirm it specifically. [2]

Defendant's points were as follows :

1. Under all the evidence in the case the verdict must be for the defendant. *Answer :* That point we decline to affirm. [11]

2. The proximate cause of the injury complained of by the plaintiff being the fright of the horse attached to the cart in which she was riding, that being an extraordinary circumstance, against the consequence of which the township defendant was not bound to take precautions, under the evidence in this case regarding the condition of the road at the point of the accident, the plaintiff cannot recover and the verdict must be for the defendant. *Answer :* That point we decline to affirm. [3]

3. According to the plaintiff's own testimony she was guilty of contributory negligence, as both she and her husband testify that they saw the cause of the fright of the horse some distance ahead of them, that the horse was frightened and stopped, the husband got out to lead the horse by the cause of the fright, she remaining in the cart. They therefore had full warning of their danger in abundant time to avoid it, but she did not do so by alighting and walking past the obstruction, a distance of but a few yards, and failing to take this timely precaution she cannot recover, and the verdict must be for the defendant. *Answer :* We decline to affirm that point, because the question is one of fact, as we have already said, for the jury to find from the evidence. [9]

4. There being no obstruction within the bounds of the public highway at the point of the alleged accident, and the road at that point being of sufficient width and in good repair, as testified to by all the witnesses in the case, to render the township defendant liable in this action, notice that the quarry adjoining the highway at the point complained of was being worked in such a way as to render the road dangerous must be brought home to the township authorities.    There is in this case no such notice to the township proved, either express or implied, from the circumstances of the case, and the verdict must be for the defendant.    *Answer :* That point we decline to affirm. [4]

5. Even if there were any danger of horses being scared at this point, the township defendant was not bound to guard against dangers of a fall over a wall situate twenty feet from the line of the road, upon the private property of the railroad company, which, in addition to being out of the highway, would be a serious interference with the use of their quarry, switch, and place for unloading stone, as the evidence shows such a barrier would have been in this case had one been placed there, and the verdict must be for the defendant.    *Answer :* That point we decline to affirm. [6] . . . .

7. If the jury believe that the plaintiff, having knowledge of the fright of the horse, and time to alight from the cart after she knew he was frightened, failed to do so, she cannot recover in this action.    *Answer :* That point involves a question of fact for the jury, and in the absolute manner of its statement it cannot be affirmed. [8]

Verdict for $4,000.    On remittitur filed, judgment was entered for $3,000.    Defendant appealed.

*Errors assigned* were (12–17) rulings on evidence, quoting the bill of exceptions ; (1–11) above instructions, quoting them.

*Q. A. Gates,* for appellant.—From the undisputed facts of the case as presented by all the witnesses, especially as presented by the plaintiff herself, we think that the plaintiff failed to show negligence on the part of the township : Monongahela v. Fischer, 111 Pa. 9 ; Herr v. Lebanon, 149 Pa. 222 ; Shaeffer v. Jackson Twp., 150 Pa. 145 ; Floyd v. Phila. etc. R. R., 162 Pa. 29.

The quarry did not interfere with the use of the road, as the road at that point was of sufficient width and in good order; it was a lawful exercise of the right to use and enjoy the property, and we think under all the authorities notice of some defect must have been shown to the township authorities before they would be liable for such an accident as this, if liable at all : Mattimore v. Erie, 144 Pa. 15.

Plaintiff should have got out of the cart : Pittsburg Ry. v. Taylor, 104 Pa. 306 ; Forks Twp. v. King, 84 Pa. 230 ; Hill v. Tionesta Twp., 146 Pa. 11; Haven v. Pittsburg Bridge Co., 151 Pa. 620 ; Erie v. McGill, 101 Pa. 616 ; Barnes v. Sowden, 119 Pa..53 ; Crescent v. Anderson, 114 Pa. 643.

As to the thirteenth assignment, the exclusion of the testimony which defendant offered to show that the railroad company had expended several thousand dollars in opening this quarry and improving the place for shipping stone—this was material upon the question of notice to the township : Hazel v. Passenger Ry., 132 Pa. 96.

The offer to prove the poverty of the township should have been admitted : Perry Twp. v. John, 79 Pa. 418.

The evidence referred to in the twelfth assignment was irrelevant and helped to swell the damages.

*Edward A. Lynch, John T. Lenahan* with him, for appellee. —The quarry had been in operation several years, so that the township authorities had full opportunity to know the elements of danger that existed at this particular part of the highway : Hinckley v. Somerset, 145 Mass. 326 ; Plymouth Twp. v. Graver, 125 Pa. 24.

In general, whether a dangerous place, not within the highway but adjacent to or near it, is so near as to make travel unsafe, is a matter for the jury : Warner v. Holyoke, 112 Mass. 362 ; Hey v. Phila., 81 Pa. 44 ; Newlin Twp. v. Davis, 77 Pa. 317 ; Erie City v. Schwingle, 22 Pa. 384.

The argument that the township is not bound to erect barriers to prevent runaway horses from getting upon the tracks is not questioned, but the case at bar is not in that class : Hess v. Lebanon, 149 Pa. 222 ; Sher. & Red. on Neg. 10 ; Burrell Twp. v. Uncapher, 117 Pa. 353.

The evidence in the case at bar clearly shows that the prox-

imate cause was not an ordinary occurrence, but one, the exist-ence of which the supervisors had or were presumed to have had notice : Harris on Damages by Corporation, vol. 1, p. 202; North Manheim v. Arnold, 119 Pa. 380; Barton v. Syracuse, 36 N. Y. 58; Horstick v. Dunkle, 145 Pa. 220; Sturgis v. Kountz, 165 Pa. 358.

Knowledge may be implied from facts, and facts are admis-sible to show knowledge : Whart. Neg. sec. 206; Mattimore v. Erie, 144 Pa. 14.

Where there is a reasonable doubt as to the facts, or as to the inference to be drawn from them, or where the measure of duty is ordinary, and reasonable care and the degree of care varies according to the circumstances, the question of contribu-tory negligence is necessarily for the jury : R. R. v. White, 88 Pa. 327; R. R. v. Walling, 97 Pa. 55; Borough v. Warne, 106 Pa. 373; Brown v. French, 104 Pa. 604; Floyd v. Phila. & Read. R. R., 162 Pa. 29; Crescent Twp. v. Anderson, 114 Pa. 643.

It is competent to prove by witnesses who examined the place where the accident occurred, but who were not present when it occurred, that in their opinion the place was dangerous : Beaty v. Gilmore, 4 Harris, 463; McNerney v. Reading, 150 Pa. 611; Kraut v. Ry., 160 Pa. 327; Phila. & Read. R. R. v. Ervin, 89 Pa. 75.

OPINION BY MR. JUSTICE McCOLLUM, October 7, 1895:

It appears from the evidence in the case that at the point where the accident occurred the width of the roadbed was about seventeen feet, that the quarry derrick was about five feet from the upper edge of it, and that it was about twenty feet from the lower edge of it to the wall, the top of which was from seven to eight feet below the roadbed, and about six feet above the railroad tracks.    It is said that the road was laid of the width of fifty feet, and, if so, it is obvious that some of the operations of the railroad company were within the lines of it. The derrick was used to move the stone from the quarry across the highway to the cars for transportation to the points where it was wanted.    While the derrick itself from its proximity to the roadbed was liable to frighten horses, the operation of it was quite likely to do so.    If the slope from the lower edge of

the roadbed was gradual and even as the appellant contends, it was nevertheless a point of danger because it declined eight feet in twenty and terminated in a perpendicular descent of six feet to the railroad.    There was no fence or guard rail between the roadbed and the slope, and a horse frightened by the appearance or noise of the derrick would naturally shy towards the open space between the roadbed and the wall. This is precisely what occurred in the case at bar.    The horse, frightened by the movements and noise of the machinery employed in operating the quarry, shied off the roadbed and dashing down the slope landed with the driver, the cart and the occupant of it upon the stones loaded on the flat car at the foot of the wall.    The plaintiff received a serious injury which she attributes to the negligence of the township in not erecting a suitable fence or guard rail at or near the lower edge of the roadbed opposite the quarry.    The condition we have described existed a long while before the occurrence in question and the township was chargeable with notice of it.    Was it a condition which called for the erection by the township of a guard rail or fence to provide against accidents of the kind under consideration ?    The jury answered this question affirmatively and the answer was authorized if not demanded by the evidence in the case.    The township however contended that conceding its negligence the plaintiff could not maintain her suit because her negligence concurred with its own in causing the injury.    This contention clearly involved a question of fact which the jury under proper instructions found against the defendant.

The case at bar does not belong to the same class as the cases cited to sustain the township's contention.    It is plainly distinguishable from them in its facts, and it is, we think, governed by the principles on which Burrell Township v. Uncapher, 117 Pa. 353 ; Plymouth Township v. Graver, 125 Pa. 24, and kindred cases were determined.    The cases which constitute the township's principal reliance in this contest recognize and approve the principle applicable to the facts of this case.    In Shaffer v. Jackson Township, 150 Pa. 145, Justice HEYDRICK, speaking for this court, said, " The concurrence of that which is ordinary with a party's negligence does not relieve him from responsibility for the resultant injury.    Examples of such con-

currence may be found in cases where by reason of causes known to the public authorities horses are likely to become frightened, and in their sudden fright plunge over an unguarded precipice or rush upon some danger within the highway for the existence of which the authorities are responsible. In such cases the consequences of the neglect of duty are natural and probable and ought therefore to be foreseen." A like view is expressed in Horstick v. Dunkle, 145 Pa. 220, and in Hess v. City of Lebanon, 149 Pa. 222.

We cannot sustain the exception to the ruling complained of in the 12th specification. It was a ruling in accord with many decisions of this court and not in conflict with any of them. In view of the circumstances of the case and in the light of these decisions, we think it was proper for Dr. Bonham to supplement his description of the locality of the accident and of the elements of danger in it to ordinary travel on the highway with his opinion that it was a dangerous place.

If it be conceded that the matter complained of in the 17th specification was irrelevant, the admission of it furnished no ground for reversing the judgment because it was at most harmless error.

We are not satisfied that any error was committed in the rulings complained of in the 13th, 14th, 15th and 16th specifications.

The case was tried in the court below on correct principles and presented to the jury in a clear and impartial charge.

All the specifications are overruled and the judgment is affirmed.