481 A.2d 870

**Thomas SIMMONS, Administrator of the Estate of Richard D. Simmons, deceased**

v.

**ST. CLAIR MEMORIAL HOSPITAL, a corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1983.

Filed Aug. 17, 1984.

446

John C. Conti, Pittsburgh, for appellant.

Judd F. Crosby, Pittsburgh, for appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

ROWLEY, Judge:

St. Clair Memorial Hospital (St. Clair Hospital) appeals from the trial court's order granting appellee's, Thomas Simmons', Administrator of the Estate of Richard Simmons,[1] motion for a new trial in this medical malpractice action. Upon a thorough review of the record in this case, we affirm the trial court's order in part, and reverse in part.

Richard D. Simmons (decedent) committed suicide on September 1, 1977, while he was a patient in the psychiatric unit of St. Clair Hospital. Testimony at the trial in this case indicated that decedent used ties from one or two hospital robes to hang himself from the plumbing fixtures in the bathroom adjoining his assigned room. (Notes of Testimony, November 25, 1981, pp. 67–68, 82–83). Decedent had been admitted to the hospital on August 28, 1977 by Alan Wright, M.D. (Dr. Wright) following a reported suicide attempt. Dr. Wright was Chairman of the Department of Psychiatry of St. Clair Hospital from January 1976 through December 1977. There was testimony that Dr. Wright, as Chairman, was responsible for the administration of the department regarding medical staff membership, and problems that developed in the unit with respect to patient care. (Notes of Testimony, November 30, 1981, pp. 19–20). When decedent was admitted to the hospital in August of 1977, he was placed on the "general observation" level of monitoring patients in the psychiatric unit where he was observed every 30 minutes. The unit also utilized a "special or suicidal observation" level where a patient would be monitored at 15 minute intervals, and a "constant observation" level.

Decedent had been admitted to St. Clair Hospital's psychiatric unit five months earlier on March 28, 1977. On that day he had been taken to the hospital's emergency room by his father. Dr. Wright was contacted by hospital personnel since he was the staff psychiatrist "on call" at the time, and it was Dr. Wright who arranged for decedent's admission to the psychiatric unit. It was at that time that decedent's

1. Richard Simmons was the son of Thomas Simmons.

parents first came in contact with Dr. Wright. There was limited testimony at trial that decedent's mother was informed by hospital personnel that Dr. Wright was the head of psychiatry at the hospital and that he was "qualified". Decedent's first admission lasted approximately 18 days. During that admission and until the time of his death, decedent was treated by Dr. Wright.

Decedent's father, appellee, brought suit against St. Clair Hospital, alleging that decedent's suicide was the result of the negligence of the hospital's employees, agents and servants in failing to provide adequate care and supervision to prevent decedent from harming himself.[2] During the trial before a jury in the Allegheny County Court of Common Pleas, appellee attempted to introduce evidence to prove that Dr. Wright was an actual *or* ostensible agent of St. Clair Hospital. The trial judge, the Honorable Silvestri Silvestri, allowed testimony as to Dr. Wright's position as Chairman of the Department of Psychiatry. However, decedent's mother's testimony regarding what she was told by a nurse at the hospital about Dr. Wright's qualifications and his relationship with the hospital was excluded upon the hospital's hearsay objection. Appellee also attempted to present expert testimony regarding Dr. Wright's negligence. However, Judge Silvestri sustained the hospital's objection to that testimony, ruling as a matter of law, that there was no evidence that Dr. Wright was the hospital's agent, servant or employee, express *or* implied. Thereafter, Judge Silvestri directed that there would be no further testimony as to the agency or negligence of Dr. Wright. Subsequently, the jury was instructed that Dr. Wright was not an employee, agent or servant of St. Clair Hospital, that the hospital was not responsible for his actions, and that any error or improper conduct on his part was not that of the hospital. The jury's verdict was in favor of St. Clair Hospital. Among the alleged trial errors asserted by appellee in his motion for a new trial was that the trial judge erred: 1) in ruling, as a matter of law, that

2. Dr. Wright was not named as a defendant in this case.

Dr. Wright was not an agent, express or implied, of St. Clair Hospital; and 2) in withdrawing the agency issue from the jury. Argument on the motion was heard by the court *en banc*,[3] and on February 25, 1982, Judge Silvestri filed an Opinion and Order granting a new trial holding that there was sufficient evidence of record to warrant a jury's finding that Dr. Wright was negligent and that it was error to withdraw the question of Dr. Wright's agency from the jury. This appeal followed.

Appellant-hospital maintains that 1) the trial judge properly exercised its discretion in ruling as a matter of law that Dr. Wright was neither an actual or ostensible agent of St. Clair Hospital; 2) the court *en banc* erred in granting a new trial generally on all issues rather than limiting the new trial solely to the question of Dr. Wright's agency and the propriety of his conduct; and 3) if this court affirms the grant of a new trial, St. Clair Hospital should be granted immunity for ordinary negligence. We will address appellant's contentions seriatim.

## I.

In reviewing a trial court's ruling granting a motion for a new trial, the task of an appellate court is to view all of the evidence in order to determine whether the trial court abused its discretion or committed a clear error of law. *Crosbie v. Westinghouse Elevator Co.*, 297 Pa.Super. 304, 443 A.2d 849 (1982); *Hayter v. Sileo*, 230 Pa.Super. 329, 326 A.2d 462 (1974). The party appealing from the grant of a new trial has the heavy burden of establishing that the trial court committed a palpable abuse of discretion or acted on an erroneous rule of law that, under the circumstances, controlled the outcome of the case and is assigned by the court as the sole reason for granting a new trial. *Keefer v. Byers*, 398 Pa. 447, 159 A.2d 477 (1960); *Mohr v. Plotkin*, 186 Pa.Super. 615, 142 A.2d 414 (1958).

---

**3.** Judge Silvestri and Judge Wekselman heard argument on appellee's motion for a new trial.

In this case the court *en banc* granted appellee's motion for a new trial on the ground that Judge Silvestri erred in ruling, at an early stage in the trial, that there was no evidence that Dr. Wright was an actual or ostensible agent of St. Clair Hospital. Upon a review of partial notes of testimony and the trial judge's notes, the court *en banc* determined that the question of Dr. Wright's agency should have been submitted to the jury rather than determined by the trial judge as a matter of law. Appellant argues, however, that the record was devoid of evidence that Dr. Wright was the agent of St. Clair Hospital. We find that there was evidence of record from which the jury may have determined that Dr. Wright was either an actual or ostensible agent of St. Clair Hospital.

 General agency principles apply to hospitals and physicians. *Tonsic v. Wagner*, 458 Pa. 246, 329 A.2d 497 (1974). In order to establish *actual* agency, it must be shown that the employer-hospital controlled or had the right to control the physical conduct of the servant-physician in the performance of his work. *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970); *Schneider v. Albert Einstein Medical Center*, 257 Pa.Super. 348, 390 A.2d 1271 (1978). A physician may be an agent of a hospital if his duties involve general administration of that hospital and giving treatment therein. *See Brown v. Moore*, 247 F.2d 711, 718 (3rd Cir.1957). Where the evidence is conflicting, the jury must decide whether the requisite right of control exists to impose vicarious liability on the employer. *Thomas v. Hutchinson*, 442 Pa. 118, 275 A.2d 23 (1971). In the instant case, there was testimony that Dr. Wright did not maintain an office at St. Clair Hospital and that he did not receive a salary. On the other hand, there was evidence that Dr. Wright was the Chairman of the Department of Psychiatry at the hospital and that he was responsible for problems that developed with patient care. In addition, there were inferences of record indicating that Dr. Wright may have been responsible, to some extent, for the physical facilities in the psychiatric unit of the hospital. Furthermore, we

note that the trial judge disallowed further testimony as to Dr. Wright's agency prior to the completion of appellee's case. The evidence regarding the actual agency of Dr. Wright may have been tenuous, nonetheless, our review of the record convinces us that there was a factual dispute as to Dr. Wright's relationship with St. Clair Hospital. Consequently, it was the function of the jury to define the precise nature of the relationship between the parties. *See Cox v. Caeti*, 444 Pa. 143, 279 A.2d 756 (1971).

■■■■ As a general rule, a hospital is not liable for the negligence of independent contractor physicians, however, an exception to this general rule has been recognized where there is evidence that the physician is an "ostensible" agent of the hospital. Under the ostensible agency theory approved by this Court in *Capan v. Divine Providence Hospital*, 287 Pa.Super. 364, 430 A.2d 647 (1980), a physician who holds independent contractor status with respect to a hospital may, nonetheless, be an agent of that hospital with respect to a patient. *See also Brown v. Moore*, 247 F.2d at 719–720. The ostensible agency theory is based on Section 429 of the RESTATEMENT (SECOND) OF TORTS, which provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

RESTATEMENT (SECOND) OF TORTS § 429 (1965). Two factors relevant to a finding of ostensible agency are: 1) whether the patient looks to the institution, rather than the individual physician for care; and 2) whether the hospital "holds out" the physician as its employee. *Capan v. Divine Providence Hospital*, 287 Pa.Super. at 368–370, 430 A.2d at 649–650. In *Capan*, the Court held that the trial judge improperly took the issue of ostensible agency away from the jury by denying a proposed point for charge based

on Section 429. In that case, there was evidence that the plaintiff entered the hospital through the emergency room and was treated by the "on call" physician. The hospital in that case did not contend, nor is it contended in the instant case, that the patient was informed of the treating doctor's independent contractor status or that the patient was aware of that status.

■ Based upon the principles enunciated by our court in *Capan*, we find that the evidence of record in this case raised a factual issue concerning the ostensible agency of Dr. Wright. Decedent herein was first admitted to St. Clair Hospital through the emergency room and decedent first came in contact with Dr. Wright at that time because he was the "on call" emergency physician. Decedent's parents were told that Dr. Wright was the head of the psychiatry department at the hospital and that he was "qualified". Dr. Wright was the admitting physician when decedent entered the hospital the second time. Under these circumstances, we find that the jury could have concluded that decedent looked to the hospital for care and that the hospital "held out" the doctor as its employee. Thus, we find that the court *en banc* properly determined that it was error to withdraw the issue of ostensible agency from the jury and that such error was sufficiently prejudicial to warrant granting appellee's motion for a new trial.

## II.

■ Appellant next maintains that the court *en banc's* grant of a new trial should have been limited to the issues of whether Dr. Wright was an agent of St. Clair Hospital and, if he was the hospital's agent, whether he was negligent in his care of decedent. Appellant argues that the award of a new trial as to all issues was prejudicial because, in effect, it overturned the jury's verdict that the admitted agents of St. Clair Hospital were not negligent in their care and supervision of decedent. No error was alleged with respect to the verdict in that regard, and appellant contends

that it should not be forced to relitigate those issues. We agree.

In *Brogan v. Philadelphia, et al.,* 346 Pa. 208, 29 A.2d 671 (1943), the jury rendered a verdict in favor of the City of Philadelphia and against two additional defendants in a suit to recover for personal injuries that the plaintiff sustained while driving on a city street near a construction area. Our Supreme Court reversed the trial court's order granting a new trial against the City, but affirmed an order granting a new trial as to one of the other defendants. The Court observed:

> Generally, where there are several defendants, if the record shows that the interests of justice require a new trial as to all of them, an order to that effect will not be disturbed on appeal. If, however, it appears that, as matter of law, there is no liability on the part of a defendant, a new trial as to such defendant should not be granted. Such non-liability appearing, the defendant should not be subjected to the expense and inconvenience of again demonstrating that in law he was not liable.

*Id.,* 346 Pa. at 210, 29 A.2d at 672. *See Wecksler v. Philadelphia,* 178 Pa.Super. 496, 115 A.2d 898 (1955).

*Stokan v. Turnbull,* 480 Pa. 71, 389 A.2d 90 (1978), involved an accident between a car driven by Agnes Stokan and a car driven by James Turnbull. Two passengers in the Stokan car who sustained injuries in the accident brought suit against Turnbull and Turnbull, in turn, named Stokan as an additional defendant claiming reimbursement from her for damage to his car. The jury returned verdicts in favor of the injured passengers against Stokan and also awarded a verdict against her for damage to Turnbull's car. On appeal from the trial court's order granting a new trial against Stokan alone, limited to the issue of damages, the Superior Court ordered a new trial against both Stokan and Turnbull on all issues. The Supreme Court reversed the Superior Court's order insofar as it granted a new trial against Turnbull. The Court determined that there was no error in the trial court's grant of a new trial as to Stokan only. The Court stated:

We would, in fact, find that the trial court had exceeded its legal power had it required an exonerated defendant to stand trial a second time.... If the jury finds one defendant negligent and exonerates another, the factual issue has been resolved. Absent reversible error in the charge—and none is here alleged—the defendant who has been absolved of negligence should not be subjected to a new trial.

*Id.*, 480 Pa. at 76–77, 389 A.2d at 92–93. *See also Sternberg v. Dixon,* 411 Pa. 543, 192 A.2d 359 (1963) (inadequacy of verdict warranted retrial regarding defendant against whom jury returned verdict, but it was not a proper reason for retrial against additional defendant who jury determined was not liable).

*Meyer v. Heilman,* 503 Pa. 472, 469 A.2d 1037 (1983) involved a suit to recover for personal injuries sustained by plaintiff as a result of a tractor accident. A compulsory nonsuit was granted by the trial court in favor of the tractor manufacturer and thereafter, the jury returned a verdict in favor of the owners of the tractor. The Superior Court granted a new trial against both defendants on all issues upon a determination that the nonsuit in favor of the manufacturer had been improperly granted. The Supreme Court reversed, holding that the trial court's nonsuit against the manufacturer was not justification for subjecting the owners to a second trial after the jury returned a verdict in their favor. The Court opined:

The Heilmans [owners] were unquestionably "absolved of negligence" in the instant matter; the fact that International Harvester [manufacturer] was granted a non-suit rather than adjudged negligent does not affect our analysis. Thus, "[t]he jury's verdict must be accepted on appeal absent trial error which casts serious doubt on the jury verdict or palpable insufficiency of evidence." (citations omitted)

*Id.*, 503 Pa. at 478, 469 A.2d at 1040.

▇ Although the above cases involved multiple defendants, we are persuaded that the principles cited therein are

equally applicable here. In this case, St. Clair Hospital, a corporate defendant, was charged with vicarious liability for the negligent acts of numerous employees, agents, servants and representatives. The agency of Dr. Wright was disputed by St. Clair Hospital. The trial court's ruling that Dr. Wright was not an agent of the hospital as a matter of law, prevented appellee from presenting evidence concerning the agency and negligence of Dr. Wright. The ruling did not, however, prevent appellee from presenting evidence in order to establish that the hospital's *admitted* agents were negligent. Thus, although the trial court refused to allow appellee's expert to testify regarding his opinion of Dr. Wright's actions, the trial court did not preclude expert testimony offered by appellee concerning the propriety of the actions of the *admitted* agents of the hospital.

The specific reason assigned for a grant of a new trial by the court *en banc* was that the trial judge erred in withdrawing the issue of Dr. Wright's agency from the jury and that the error was prejudicial to appellee's case. We are not persuaded that the error cited by the court *en banc* affected the jury's determination with respect to the negligence of the *admitted* agents of St. Clair Hospital. In rendering a verdict in favor of St. Clair Hospital, the jury absolved the admitted agents of the hospital of negligence concerning decedent's suicide. The jury was specifically instructed *not* to consider Dr. Wright's conduct in rendering their decision. Appellee has alleged no error in the trial of this case or in the trial judge's charge to the jury with respect to the admitted agents of the hospital. The evidence was sufficient for the jury to conclude that the admitted agents of the hospital were not negligent in their care and supervision of the decedent, and we see no reason why the hospital should be required to re-litigate these issues. Therefore, we find that the new trial in this case should be limited to the following issues: 1) whether Dr. Wright was an actual or ostensible agent of St. Clair Hospital; 2) whether he was negligent in his care and

supervision of decedent; 3) whether his negligence was the proximate cause of decedent's death, and 4) damages (if appropriate).

## III.

 This action was originally commenced before the Arbitration Panels for Health Care in 1979. In answer to appellee's complaint, St. Clair Hospital raised the defense of immunity for ordinary negligence pursuant to the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4101 et seq. The appellant-hospital then filed a Motion for Partial Summary Judgment which sought to preclude appellee from maintaining a cause of action for ordinary negligence pursuant to the above-cited Act and the Mental Health Procedures Act of 1976, 50 P.S. § 7101 et seq. By opinion dated April 28, 1980, the Administrator for Health Care Panels (Administrator) denied appellant's Motion and certified the questions involved for interlocutory appeal. The Commonwealth Court denied allowance of appeal by Order dated June 9, 1980, and the Pennsylvania Supreme Court subsequently denied a petition for review of the Order of the Commonwealth Court.

This case was then transferred to the Court of Common Pleas of Allegheny County [4] and appellant-hospital renewed its Motion for Partial Summary Judgment. The trial court declined to consider the Motion since it had previously been ruled on by the Administrator. At the close of the trial in this case, the trial judge instructed the jury on principles of ordinary negligence. St. Clair Hospital now maintains that the Administrator and the trial judge erred in refusing to grant its partial motion for Summary Judgment to declare the hospital immune from ordinary negligence. Thus, appellant requests this Court to rule that St. Clair Hospital is

4. Before this case was heard by an Arbitration Panel, the section of the Health Care Services Malpractice Act which granted exclusive jurisdiction to the Panels in medical malpractice cases was declared unconstitutional. *Mattos v. Thompson,* 491 Pa. 385, 421 A.2d 190 (1980). The parties then exercised their right of election and the case was transferred to the Court of Common Pleas of Allegheny County.

immune from ordinary negligence upon retrial of this case. We find this request to be premature.

The jury found that the admitted agents of St. Clair Hospital were not negligent in their care and supervision of decedent. Thus, any error by the trial judge in either refusing to preclude evidence of ordinary negligence or charging the jury on ordinary negligence was not prejudicial to appellant's case. By appealing a grant of a new trial, appellant evidenced its satisfaction with that verdict. *See Keefer v. Byers,* 398 Pa. at 457, 159 A.2d at 482. The new trial in this case will be limited to the issues of the agency and negligence of Dr. Wright, issues that were ruled upon by the trial judge at an early stage in the first trial. On retrial, St. Clair Hospital may be successful in establishing that: 1) Dr. Wright was not the hospital's agent; 2) if Dr. Wright was the hospital's agent, he was not negligent; or 3) even if Dr. Wright was the hospital's agent and he was negligent, his negligence was not the proximate cause of decedent's suicide. If any of the above situations occurs at the new trial, the issue of the hospital's immunity for ordinary negligence will not arise. Since this case is to be remanded for a new trial on these issues "we should not consider questions which may not arise unless exceptional circumstances exist or questions of great public importance are involved." *Harger v. Caputo,* 420 Pa. 528, 532, 218 A.2d 108, 111 (1966). The immunity issue in this case is potentially moot and we decline to consider that issue at this time. *Id.*

Accordingly, the order of the Court *en banc* is affirmed, in part, with directions that the issues upon retrial shall be limited to: 1) whether Dr. Wright was an actual or ostensible agent of St. Clair Hospital; 2) whether he was negligent in his care and supervision of decedent; and 3) whether his negligence was the proximate cause of decedent's death, and 4) damages (if appropriate). Insofar as the Order of the court *en banc* granted a new trial regarding St. Clair Hospital's liability for the acts of its admitted agents, it is reversed.